3-19-0586 Carolina Casualty Insurance Company, appellant cross appellee v. C.H. Robinson Company, et al., appellee cross appellant Um, Mr. Litchfield, I cannot hear you. Good morning, Your Honor. Thank you. The court, please. My name is Daniel Litchfield. I represent the plaintiff appellant and cross appellee. Uh, Carolina Casualty Insurance Company, I'll refer to it either as C.C.I.C. or Carolina, variously. This case is about whether there was an offer to pay. It's really that simple. C.H. Robinson tries to make that offer to pay language into something else other than the simple words that it consists of. But at bottom, an offer to pay is just that. It's a statement of a willingness to do something. C.C.I.C. did so in three ways. I'll refer to two letters that it sent shortly after the underlying judgment. I'll refer to its interpleader complaints and to certain motions and briefs that it filed in the interpleader action. Any one of these would suffice to activate the policy language that says that if the company offers to pay its limit of insurance, that ends any duty to pay post judgment interest. Additionally, there is a cross appeal here. That's the issue of interest on interest. I don't know how my time will go, but if I can have some time to deal with that during this first session, I will try to do that. Can you go back to the can you go back to the post judgment interest? There was never an offer to. To include the amount of the post judgment. Interest was there. As a point of when you would have made the deposit. It was there was not and it was not necessary. The contract involved here says that we cease any obligation to pay post judgment interest when we offer to pay our limit of insurance. Limit of insurance is a defined term in the policy. It's defined as the million dollar figure. It is specifically defined to exclude to not include post judgment interest payments as part of the limit of insurance. The precise language that we're dealing with is offer to pay our limit of insurance. Limit of insurance is defined on the first page of the policy, the policy, the declarations page. That's a core defined term, and it's defined as one million dollars post judgment interest provision, which is in the supplementary payments. Part of the policy is what creates the duty to pay post judgment interest. As long as we haven't paid, offered to pay or deposited with the court, any one of those three will suffice. We're we're focused on offer to pay here. The issue is whether CIC offered to pay its limit of insurance or more particularly, did it offer to pay one million dollars? It did. The moreover, the supplementary payments provision in the policy expressly says that the supplementary payments are not part of the limit of insurance to separately defined terms. One defined particularly as just meaning one million dollars. So we sent letters shortly after the underlying judgment and those letters, by the way, as another aspect, there was never a deposit with the trial court, was there? There was a deposit with the trial court, but it was about a year ago. There was not earlier than October of 2019. That's despite multiple motions and briefs and efforts to get the trial court to take the limit of liability. And we have noted in our. Well, what do you mean to get the trial court to take the limit? You mean to go to agree with you about the amount, but you never made an effort to make a deposit. You never deposit with a clerk of the court, the money, right? No, well, we did once the court agreed with us that we could do so. But we wait, wait, wait. I don't understand that you didn't need the court to make a deposit of the of even the amount that you thought was correct. Isn't that right? I don't believe that's true. And having personally taken the funds to the clerk a year ago, I certainly don't think that's the case. I think that the clerk needs to have some sort of an order or guidance from the court in order to pave the way. You can't just walk in with a check and leave it with the clerk, particularly a million dollars. Prior to a year ago, did your client write any check to anyone be insured or anybody else? No, Your Honor, but it did seek the court's order to to have the fund paid to the court on multiple occasions. Well, what's the difficulty? Explain to me why you couldn't write a check and tender it to one of your insureds. Well, we first of all, we had filed an interpleader action, which means that we had said in our pleadings that we needed to tender the money to the court. If we were while the interpleader action was pending to then write a check on the side, either to underlying claimants or to the insureds without going to the court for assistance. I think there could have been some some issue there. But more importantly, we asked the court, for instance, on multiple occasions, we said the court should order plaintiffs to place the insurance funds with the court and the court denied those requests. And there's an order in 2010 where the court stated its reasoning for denying it. And the reasoning was that the court thought it was premature to have the claimants on the stake get going on their dispute one versus the other versus the other about how much of the stake each of them should get. But under RISD, what the court should have done is it should have taken the money and dismissed us and let us let us go. And can I back up for a second? Sure. What law exists that says that you could deposit an amount of money, even the amount that you claim, with the circuit clerk? I don't understand that. There's no law saying there has to be a litigation, you can deposit with the clerk an amount of money that's even if it's disputed, correct? Well, Judge, I think we have to look, I think it's the Halloran case, which is a case that's championed by my opponent. And in the Halloran case, the lawyers dropped a check off with the clerk and said, put it in your drawer. And I don't think that that ended up going too well. Well, that's put a check in a drawer is sort of an odd thing. I'm not talking about putting a check in a drawer. I understand. What I can tell you is in our complaint, we asked the court to administer the fund. We asked the court to order and command the fund. We said the fund created by the policy should be administered by the court. In our motions, we said the court should order the plaintiffs to place the insurance funds with the court. We told the court on multiple occasions that we had offered to pay the funds to the court. We were looking for that order that we eventually got on September 3rd, 2019. But we had been looking for that order for a number of years. Your Honor is suggesting, I guess, some sort of a self-help. I don't think that it was. I'm not suggesting self-help. In this litigation, there's a dispute about this money. And you could have put the amount into the circuit clerk's office. And they would put it in their trust fund. Judge, all I can tell you is that Carolina repeatedly asked the court to order that we do exactly that. And under the circumstances, we thought that that was the appropriate route to take. We thought that that was appropriate given interpleader law, which establishes in the Rizzy case that the court is to take custody of the stake or the fund. It's the court that is supposed to do that. And that's what the case law and the statute say, not the clerk. But you have an obligation to pay the policy limit to the insurance. And the bottom line here is you've kept a million dollars for 15 years. Actually, I apologize. No, you can correct me because this is the time to get us on the right track. No, and I apologize. There's a delay in the technology. And so when I thought you were done speaking, you were not. I did not mean to interrupt. All right, that's fine. Maybe we should turn mics off, which is going to happen this week in the in the presidential debates. But that's an aside. What happens is your client agrees that the policy limit is a million dollars and you've got to pay somebody a million dollars. But yet you do not write a check for 15 years. Why? Why is that? Because someone will look at that and say, although you filed the interpleader complaint, you were just delaying so that you wouldn't have to surrender a million dollars. Judge, with with respect, I think the record is contrary to the sense that we were delaying, because starting with the initial complaint in 2004, each complaint asked the court to take the fund. Starting with motions that were filed, I think, as early as 2009, we expressly asked the court to take the fund. Those are not the actions of a delayer. Those are the actions of somebody serially seeking to have the court order that the fund should be taken. What the court said in the 2010 order, and then again in the September 2019 order, is that it would it essentially refused to take the stake, and it had a reason for refusing to do so. We just think that that reason was legally wrong, but the reason the court gave was that it thought it premature to take the stake from us until such time that the parties could then go at it with each other hammer and tongs. We think Rizzi points out a different approach that should have been taken, and the one that we sought the court to order be taken. Can I back up again? The insurance policy, it seems to me, indicated that it required the capital to actually deposit the proceeds with the trial court, and not just offer to do so, but actually deposit the money with the trial court. Actually, Judge, the particular language in the policy is that we have the choice of paying, offering to pay, or depositing with the court, one or the other or the other. We are here saying that we offered to pay, that an offer is showing a willingness to do something. Under the plain meaning rule, that's what an offer is, and that's what we did repeatedly. One of the options that we had, one of the three options, was indeed to deposit, but it says or. We can pay, offer to pay, or deposit with the court, and we're here asserting that we offered to pay and that we did it serially. So, a deposit would have been one of the options, and we did ask the court on multiple occasions to enter an order to deposit those funds, but we also made the offer to pay, which alone was sufficient to stop the running of any post-judgment interest that we would owe under the supplementary payments provision. Are you saying that you needed a court order to deposit the money? We're saying that we believe we did, and in fact we asked for such a court order repeatedly. Right, and I realize that, and you think that you're required to get that court order before you're actually deposited. All I can tell the panel is that my own personal experience in this case and other situations is that when I take a check to a clerk, they want to see an order. Clerks have, in my experience, been highly reluctant to take large sums of money that, you know, somebody just walks in with off the street. They need some sort of guidance and instruction, and that's what we sought from the court, and we sought it repeatedly, starting with our initial complaint in 2004. So if I understand you correctly, your position is you could just keep the money, not deposit it with the clerk, where there would be something accruing, some kind of interest, post-judgment interest. For all this period of time, you held the money, right? We don't have to pay post-judgment interest from the point in time when we offered to pay, which the record shows we did multiple times. We sought to get this money out of our hands with multiple efforts before the trial judge and would have gladly gotten that money out of our hands pursuant to the first stage of the interpleader process as established in the Rizzi case. There's no dispute from the other side as to what the Rizzi case says or that this is a two-stage process. But while we were trying to effectuate stage one, the judge was saying, no, we're going to have to do stage two first, and thus I'm going to wait, and expressly said that in the 20—I believe it was 2010—order, that the court would be—did not feel that it was— Can the judge negate provisions of your insurance policy? The judge can and did, I guess, refuse to enforce provisions of our policy. That's part of the reason why we're here. Can the judge negate provisions? The policy says that by offering to pay, we ended our obligation to pay post-judgment interest. We offered to pay. So negated or not, that's what happened, and that's how the policy should operate. And what's the period of time we're talking about where you didn't have to pay post—under your position, you didn't have to pay post-judgment interest? Under our position, we wouldn't have to pay any post-judgment interest because we were making offers to pay prior to the judgment. That is an issue that the parties have debated. And how many years was that? Well, the initial interpleader complaint was brought in 2004, 90 days after the accident. The underlying judgment against our policyholders was in March of 2009. We sent letters offering to pay the $1 million limit of insurance in both March of 2009 and September of 2009. We made motions to the court asking the court to take the interpleader state on multiple occasions throughout this entire time period. So, again, it's not for want of trying. We expressly asked the court to do these things. That is in the record. And the court refused to do them, and the court had reasons why it chose not to do them. And at that point in time, I would assert that it's not on my client that that took the time that it took because we were making efforts. I'm sorry to interrupt, but after 2009, after the date of judgment, did you offer to pay? Were there any contingencies attached to that offer to pay, such as a release? The two letters made mention that we'll send over a release, but they did not condition payment on an agreement to a release. Why else would you send over a release? Well, because the offer to pay was what it was. And then in the course of the letter, counsel said, let me know who to make the checks out to, and I'll send over a release. I think that's kind of a standard phrase that lawyers would put in a letter in that circumstance. But it was not stated that it was conditioned on there being release. I think it was more of an expectation that that's the natural order of things. How many offers to pay occurred between 2009 and the date of the order in 2019? I can count them up for you. I can think of three or four offhand. Were those three offers also, did they mention a release? No, not all of them, because some of them were made by virtue of motions brought to the court saying, take our money. And this is where there's an interesting interplay of the offer to pay aspect of the insurance coverage dispute, on the one hand, and interpleader law on the other. And although there's some interplay between them here, they're really two quite different propositions. Under one, we're dealing with a contract that says we have no duty to pay once we have offered to pay the $1 million. On the other hand, under the interpleader statute and cases interpreting it, the judge is supposed to take custody of the stake. And we asked the judge to do that. And the judge refused to do that. And again, the court stated its reasons, but we think those reasons were inappropriate. And we think they were contrary to RISD and the case law that we've cited. So the judge's inappropriate order allowed the insurance company all this time to keep the funds, and I suppose accrue interest on the funds, have the funds available in their account, right, in the insurance account. The court's order certainly stopped us from doing what we asked the court to do. You had use of the funds all this time, right? We had use of the funds. Whether interest was earned or whatnot would be speculative. I presume there was some interest earned, but we don't know that. It would be speculative if you didn't have the use of the money? No. You had the use of the money. We had the use of the money, Your Honor. What I was commenting on was the issue of what, if anything, we earned off of the use of the money. I presume something was earned, but I don't know that, and it's not in the record. Yeah, that would be, if nothing was done with money, I suppose that would be a question for however your insurance company is organized. Are there any further questions? Not from me. Not from me. Mr. Richfield, thank you very much. Thank you. Mr. Sampson. Yes, may it please the court. Don Sampson on behalf of C.H. Robinson, Appley & Cross Appellant. Let me go back for just a moment to what the insurance policy says under the supplementary payment section. As Mr. Richfield has pointed out and as your honors have perceptively noticed, Carolina had three options under the supplemental payment section. Pay, offer to pay, or deposit to the court. And we know it never paid a judgment creditor. We know that the first deposit it paid was in October of 2019. It did not include accrued interest, so even that deposit did not stop the continued accrual. I'll get to that in just a few minutes. So Mr. Richfield and Carolina focused on the offer to pay. And they rely upon their various pleadings and motions and they say, well, these all constituted an offer to deposit money with the court. So an initial question I think we have to ask here is the term pay as used in the policy. Include a deposit such that an offer to deposit is an offer to pay. And I would suggest to the court that the answer to that question is no, it does not. For at least two reasons. One is just a matter of contract instruction, rules governing contracts. Those rules say that you're supposed to give meaning to all the words and sections of the policy of a contract. And if the term pay included a deposit, then you wouldn't need this language in the policy that says deposited in court. So a deposit is something different from a payment just under the rules of contract instruction. But then we've also cited to a couple of cases in the briefing here that define what what paid or payment means in the context of a liability insurance policy. Those cases are the Batsberg deal and the China Ocean shipping case. And both cases, now they're not, I don't want to mislead the court. They're not focusing on the supplemental payment section. They're focusing on a different section of a liability insurance policy. But they're the same principle applies. What those cases say is that a payment means the transfer of money to someone to whom the money is owed. And they say a court isn't owed any money. So when you make a deposit in the court, you're not making a payment, you're making a deposit. So an offer to deposit is not a payment. And Carolina has not cited any case law to the contrary. All of their arguments about the effect of their pleadings and the effect of their motions really are beside the point. They're irrelevant. Because for a deposit, you constitute an event that cuts off the obligation to pay post judgment interest. The insurance company has to part with the money. It can't just file some papers with the court. It has to part with the money. And Carolina didn't do that, at least until October of 2019. Now, our brief goes a step further. And we say that Carolina also did not make a bona fide offer to deposit. And for that, we look to the prayers for relief in all of the eight or nine complaints that were filed and the various motions on which they rely. And in none of those complaints, in none of those motions, did they expressly ask the court to be ordered or permitted to deposit money with the court. Some of the motions and some of the pleadings, in fact, took the position, we don't owe anything at all. You ought to just let us off the hook entirely, judge. And a couple of the motions never got ruled upon. Mr. Listfield referred to a motion back in 2009. And I think what he's referring to is a filing made by Carolina in January 2009, which was before the entry of the judgments in the tort case. And it wasn't even a motion. It was it was referred to as a pleading or a memorandum in support of our complaint or something like that. And the court said, no, you got to wait at least until judgments are entered. In order to in order to go forward with the interpreter. That particular filing was not renewed after the judgments were entered in March of 2009. They made a further motion in October. I think it was October of 2009 after the judgments were entered. And they didn't even bother to get a ruling on that motion. What are the local rules in Will County with regard to setting motions for hearings? Who does it fall on? It falls on the parties to notice of a motion. And they noticed up this motion in October of 2009. And there was actually briefing on it. But then new counsel came in. And I think you'll see this in the record. I looked at it myself. New counsel came in and then there was never an attempt to obtain a ruling on this particular motion I'm talking about. Is it fair to say then they abandoned the motion? Absolutely. It is. And they can't rely upon a motion on which they never got a ruling as a basis for error on appeal. So they've waived whatever error might have come out of the ruling on this motion by not obtaining a ruling. Again, the prayer for relief didn't ask for the didn't ask didn't include a request to deposit money with the court. But, you know, that was that was part of the text of the document on which they never obtained a ruling. Now, in its brief, Carolina comes back in its reply and it says, well, maybe we didn't really make a specific request. But at least our our pleadings and our motions demonstrate a willingness to pay the fine. I don't think they did, because many of these pleadings and motions, they included a statement that we don't know money at all. I don't know how that reflects their willingness to pay. I don't think it did. But a willingness to pay is not what's required under their policy. They're required to pay, offer to pay or deposit in court. And it doesn't say, well, if you exhibit a willingness, you know, that's sufficient or a willingness to deposit. That's that's not what's required in the terms of their own policy. Carolina did not get serious about making a deposit with the court until the end of 2018. And at that point, it filed its motion to declare interpleader proper, etc. And then the prayer for relief. This is a document that stated. It's got a record number on here. Five, five, five, four. Filed at the end of 2018. And then their prayer for relief. They specifically asked for an order that Carolina deposit the funds, parenthesis, it's million dollar policy proceeds, close parenthesis, with the clerk of the circuit court. This is the first time that they made such a request with the court. Robinson did not oppose that motion. The motion was granted and eventually led to the deposit of a million dollar proceeds. Do they need permission from the trial court to deposit the money? I don't think so, Your Honor. I like you. What law says that? I'm not aware of any rule that says you have to get an order from the court. At the very least, Carolina didn't pursue this. They didn't call up the clerk's office and say, can we come in and deposit these funds? So, I'm not aware of any rule or law that says that a party can't make arrangements with the clerk's office to deposit funds with the court. Are you suggesting that a phone call to the clerk would be enough? No. If they walk in with a check and tender it to the clerk and the clerk refuses to take it, well, maybe that's a good faith attempt to deposit. But are you suggesting a phone call would have been sufficient? No, absolutely not. I'm saying they didn't even make inquiries. All right. Whether they could have just deposited the funds apart from the interpleaser action. They never even took that step. Certainly, they'd have to go beyond that after making the inquiries and following the clerk's office. Absolutely. Are you aware of any case law that indicates the circuit clerk would have the ability in litigation when one of the parties in litigation, there's a disputed amount of money and one of the parties seeks to deposit into the circuit clerk's trust fund or whatever, some money that's in dispute? Is there any authority for the circuit clerk in their position to say, no, we're not going to take their money? I haven't taken a look. I haven't searched for that kind of case law one way or the other, Your Honor. I don't want to mislead the court. I mean, I know that did happen in this case, but I guess I've never heard of that, where the circuit clerk can take a position about that. The court that would have to say, no, I don't understand. Yeah, I'm not aware of a clerk being able to decline if the parties are agreeable. Why would a clerk not be agreeable? In this case, did the trial court say you may not, you cannot deposit the money? No, the court did not say that, Your Honor. In the first, as I mentioned in the motion that had been filed in October of 2009, there was never a ruling on it at all. Various other pleadings, complaints were filed throughout the years, which contained no specific request for leave to deposit funds with the court. The various motions for summary judgment, and we can look at, I've referred to those various motions for summary judgment in the briefing here. There were like three filed, three or four motions for summary judgment filed by Carolina in 2010 and 2011. They all took the position, we don't owe money at all, so give us summary judgment. So there was no specific ruling by the trial court that you can't deposit in answer to your question. There was no specific ruling to that effect, Your Honor. There was one ruling in early 2009 that it's premature. That wasn't even a motion, but that pleading wasn't even denied. The court simply said it's, we're going to enter into a continuum because it's premature. There was no further specific ruling one way or the other. Until the end of 2018 and 2019, when Carolina finally made a specific request, and that motion was granted. Also between 2009 and 2018 interest is accruing post judgment interest is accruing during those nine years. Do you agree. I do. I do it as a crew, and the fight over who pays the post judgment interest would not prevent the insurance company from handing over a million dollar check. Absolutely not. But, absolutely. But they wanted a release. And there was a dispute at that point in time whether the limit, the million dollar limit included post judgment interest and costs. Am I correct or am I misreading the briefs, I think if I think you're reading it is at least partly correct that they wanted to release and their various motions they asked to be completely released from any further obligation once they paid the value. Now, as to whether or not interest accrued interest had to accompany the payment, or the deposit. That was never raised in the trial. Does the release imply that it would read that we are releasing the company from any other obligation to pay and wouldn't that sort of let them escape post judgment interest. And that's what they were asking for in their various motions for summary judgment that they filed. They asked, they said well we don't owe anything so you know enter an order and find that if we pay our million dollars that we have no further obligation. So, they, they were effectively saying we don't owe any post judgment interest at all. You know they raise an argument, and I don't want to get ahead of your honor here but they raise an argument here on the field that they didn't have to accompany. This was raised by by Mr Litchfield, they didn't have to accompany any payment or deposit with interest that had already accrued. That argument was never made in class. And I stand on that tradition we pointed that out in our opening brief. Thank you. You've answered my question. Thank you very much. Well, let me go to that. Let me go to that point. Well, you're missing something. Unless Justice Wright wants you to go ahead. You also are out of time. I am out of time so I'll be glad to answer any further questions otherwise I'll let Justice Wright. No, no further questions. No, I have no further questions. Thank you, Mr. Yes, sir. Mr. Thank you very much. Let me try to pull some of these strings apart and and and share some analysis. First, in the order of March 26 2012, the court addressed these issues, and the trial court indicated that until the amended consolidated cross claim was resolved, it would not move forward. It said that summary judgment which included summary judgment on a variety of issues was premature. At that time. Second, we had asked the court to order us to pay the amount to the court. And under interpleader law that's what we're supposed to do is pay it to the court. I don't see a distinction in the law between the court and the clerk. There may be no practical distinction once the payment is made but I'm going with what the law says. So we asked the court. And we did not get an order from the court, telling us to pay the money to the court. So this is where I'm going to interrupt you I agree that the court was stonewalling you wouldn't let you deposit the money with the court, but what you're risking is a lot of post judgment on a million dollars so why not pay, or why not make a more concrete offer to pay, why not abandon the interpleader, and by God stop the process of accruing interest. Well, first of all, what what Carolina casually did is it continued to seek to pay, but it sought to pay in a way that was consistent with interpleader law by seeking to pay it was making offers to pay offers to pay our can't cannot I think fairly be transformed into offers to deposit. Does it say that a complaint for interpleader is an offer to pay. We found no cases saying either way, whether it is or isn't what we're saying though, is that we unambiguously told the court to take the stake, which is necessary and interpleader law, and that that ought to be an offer to pay, but one store number three was closed by the court, assuming argue under what was closed by the court. Why didn't your client take other steps to either make a more definitive offer to pay or to tender a check. Well, I wasn't representing the client at that time but what I can tell you is that it would be inconsistent with the interpleader which is had long been of record to go and make a payment. Unilaterally, and why is that why is that well because we have, we have filed a pleading saying court, take our money, and then deal with the stake with those who claim on the money we have no claim for it. So take our money. Oh money to the court you owe it to. Well, I should point out that the policy doesn't say the offer to pay has to be any particular person or persons. It says offer to pay offer to pay me a million dollars it wouldn't get you off the hook for post judgment interest, and that would be a good reason to ask the court for an order, protecting us before the money's out of our hands. What traditionally happens in an interpleader and I do a lot of these in the life insurance arena family members disputing who should receive the proceeds is the insurance company in the life insurance arena is routinely released from the case dismissed from the case and that's a with prejudice dismissal by the court. After the life insurance company says take our money in the court, takes it. That's all that my client was trying to do here. Under the interpleader statute is similar contract language in the life insurance policies that obligate the insurer to pay post judgment interest. No, because they're not liability policies, so it's just not an issue that arises in that so I'm not sure I'm persuaded by your analogy. Well, my analogy isn't meant to persuade you that life insurance policies are like liability policies, it's, it's meant to persuade you about how interpleader works in the ordinary course of applying that statute and enforcing that statute. And in the ordinary course, when there is an interpleader and one example is life insurance but it is by far not the only example. But when interpleader is enforced. The first step and Rizzi says this is the court takes control of the fund. That's what we pled that the court should do that's what we asked to do. I understand that part of your argument. Thank you. Thank you. So, I'm unsure of where I stand on my time I'm colorblind. Left. Thank you. I couldn't tell if it was a red or yellow light that's my disability. So, bottom line then is that if we look at the order of March 26 2012, I think it sheds shed some light on this council mentioned the battle of the Gulf case and the China Ocean case. Those are duty to defend cases that don't deal with interest at all. Those were insurers who were saying, can I pay my limit and in the duty to defend that's not what this case is about. Carolina defended and has defended it's insured throughout and I don't think there's any, any dispute about that. So, I'd say at bottom, it's important not to confuse the offer to pay language with the deposit to the court language yes we asked the court to take a deposit. That's different from offering to pay which we also did and we did in multiple occasions mentioned of a release in the letters that wasn't a condition for the payment plus we've cited the case law and it's the, it's the majority rule nationally that asking for a release these exact facts come up. Now, thank you very much. Thank you very much. Thank you both for your argument today. Does this matter under advisement. The better with a written decision with insurance. And now take a short recess. That's for sure. Excuse me. The. Mr Samplin gets a five minute rebuttal for his cross appeal. Well, all right. I'm sorry, sir. It's up. This is having pleasure. Thank you, Mr. Thank you. Thank you very much. I don't want to prolong these proceedings. I didn't have a chance to say anything about the cross appeal. If you don't mind maybe I'll just say a few words that about. And just next few minutes, if you could just cut to the chase for me, would you address the interest on interest at the trial judge race to respond day. I certainly will. The trial judge that the total amount of the contribution judgment here was $14.3 million. And we asked for post judgment interest, beginning in January 2015 on a $14.3 million. And the trial judge agreed with this, however, with this caveat and said that 14.3 includes a $2.6 million amount of interest that Robinson actually paid in 2011 Robinson paid off his judgments, but the post judgment interest in 2011. And part of that payment was it paid a lot more than interest but $2.6 million represented half the interest. trial judge said that we're, we're entitled to recover the $2.6 million. And post judgment interest only on $11.6 million going forward from January of 2015. Here's why we think that was error, and hopefully I'll get to your question. The reason is the interest statute itself, the interest statute says that we're entitled to post judgment interest on the judgment, the judgment that was entered in January of 2015 was $14.3 million. And the various cases that we cited in our, in our brief, including the river case from from the third district. case did involve a different interest statute, but all of the cases, and for the proposition that statutory post judgment interest applies to the judgment. Even if that judgment includes amount and amount attributable to interest. So, the bottom line here how much money is it state. Well, it would be the amount of interest at 9% on $2.6 million from January of 2015. So, we're not talking about insignificant amounts of money. So, and again, I could get into mathematics, I don't think I'm going to have time to do that I don't think you want to hear from me. I was just asking if you had done the math and if you had a bottom line, that's fine that you don't. I didn't either. I could figure it out very quickly 10% on two points. That's fine. I don't want to chew up your time. It's a considerable amount of money it's roughly a quarter million dollars per year that we're talking about from January of 2015, to the date that it's actually. So, I end with that and couple minutes early, and let you go. Mr. Yes, Your Honor. I'm sorry Your Honor I my mic, or my speaker cut out. Now, I can hear him. Yes, I can hear you. Yes. Judge. The problem with this interest on interest argument is it's grounded on four cases, and those four cases BAC home loans superior structures river and Bank of Pawnee simply don't support the argument, they have nothing to do with what we're doing here. BAC home loans and Bank of Pawnee go to the issue of what rate as between two rates should be applied a promissory note rate or a post judgment interest rate and they were seeking the dispute was over which rate should apply throughout the entire So that's a different situation and we're dealing with as well. River is questionable whether it even involves interest, what the court in river called interest a couple of times was also referred to as amounts paid for an option to purchase land. And the option to purchase land is clear from the district description of the contract to be exactly what one might presume it would be that is, we give you a down payment. We don't have to buy the land but to give an option of, you know, the right of first refusal to get this land will pay you a certain amount of money on a schedule that amount wasn't paid on the schedule it was. There was a breach and damages were awarded for not paying the amounts to hold open the option. So I don't think it's fair to characterize river as in any way, addressing whether there would be interest on interest, because the amount of the judgment involved the failure to pay these payments for the option to purchase the land. And that's quite a different, quite a different thing entirely. Also in river, the interest that was at issue was pre judgment interest, not post judgment interest, and I can see a distinction there we're dealing with different statutory regimes and and certainly it was a different issue that was being agreed by the parties. I think my time is up or nearly up. And so in some those four cases simply don't support the proposition that that Robinson seeks, they support with the trial judge did on this score. Thank you. Sure. Very briefly, we're not seeking interest on interest we're seeking simple interest on a judgment that was entered the first time in January of 2015 simple interest at 9% so we're seeking. In addition to the other amount awarded by the court paid out of paid out of pocket. Thank you both again. And we will now have a recess.